**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 08-153-DLB**

**MELISSA D. GUNNING,**
**on behalf of herself and a class**
**of similarly situated persons** **PLAINTIFFS**

**vs.** **MEMORANDUM ORDER**

**FIRST AMERICAN TITLE**
**INSURANCE COMPANY** **DEFENDANT**

* * * * * * * * * * * * * *

This case represents another of the proposed class actions challenging the imposition of local government premium taxes. This removed case is one of the later-filed actions, having been brought in Boone Circuit Court one day prior to the effective date of new Kentucky statutory provisions directed at this local government premium taxation issue. This case differs, however, from the other pending local government premium tax cases in that it involves an alleged improper premium tax upon a premium for title insurance.

In her class action Complaint, Plaintiff Melissa Gunning alleges that in 2006, in conjunction with her purchase of real property, she paid for a policy of lender's title insurance underwritten by Defendant First American Title Insurance Company ("First American"). Her charge for that policy included a $20.00 municipal tax Gunning alleges represented a 5% local government premium tax for the City of Florence, and that this

charge was improper because, while the real estate mailing address was Florence, the property was actually located in the unincorporated area of Boone County, which had not enacted a local government premium tax. Plaintiff Gunning further alleges that, when she sold the property approximately a year later, she was again charged a municipal tax of $22.22 on the lender's title insurance underwritten by Defendant First American Title.

In this action, Plaintiff Gunning seeks to represent a proposed class of:

> All customers, owning or insuring risks in the Commonwealth of Kentucky, who purchased an insurance policy from or underwritten by First American Title Insurance Company during the relevant time period (June 14, 2001, to the date the Court enters an order certifying a class of Plaintiffs), and who were charged local government taxes or collection fees on their premium statements when none were owed, or were charged such taxes or fees at rates higher than permitted.

(Complaint, at ¶ 42). Her Complaint presents six counts: (I) violation of the Kentucky Consumer Protection Act, K.R.S. §§ 367.220 and 367.170; (II) private right of action based upon K.R.S. § 446.070 for alleged violation of K.R.S. § 304.12-010, deceptive acts or practices in the business of insurance; (III) private right of action based upon K.R.S. § 446.070 for alleged violation of K.R.S. § 304.12-190, illegal dealing in premiums; (IV) conversion; (V) negligence; and (VI) declaration of rights that Defendant is not entitled to impose a separate, additional fee based upon K.R.S. § 91A.080(4) for collection of the local government premium tax.

Defendant has not yet answered Plaintiff's Complaint. Defendant presents its view that Plaintiff's lawsuit "is a disproportionate response to an alleged mistake by a non-party and an improper vehicle to shift responsibility to a title insurer" by moving to dismiss. First American moves for an order dismissing the Complaint and striking immaterial allegations pursuant to Rules 12(b)(6) [failure to state a claim], 12(b)(7) [failure to join a party under

Rule 19], and 12(f) [striking redundant, immaterial, impertinent, or scandalous matter from a pleading] of the Federal Rules of Civil Procedure. (Doc. #8).

Defendant maintains that Plaintiff sued the wrong party – that the $42.22 in issue was calculated, charged by, and paid to Nielson & Sherry, PSC, to be remitted to the City of Florence. First American says Plaintiff has not alleged that it ever received the $42.22 and that Plaintiff should have sued Nielson & Sherry and the City of Florence.

According to Defendant, the Complaint's two settlement statement exhibits clearly show the municipal taxes were paid to Nielson & Sherry, the correct Defendant. Citing *Wintermute v. Discover Card Services, Inc.,* 2008 WL 1772758, at *1 (W.D. Ky. Apr. 16, 2008), it submits Plaintiff is bound by the exhibit, which is clearly inconsistent with her allegation that First American charged her for municipal tax. Defendant adds this same standard, plain language of an exhibit being inconsistent with allegations of a complaint, also requires Plaintiff's declaratory judgment claim for self-payment or collection fees be dismissed, as neither HUD settlement statement lists a collection fee.

Defendant's assertion that the exhibits are clear, inconsistent with the Complaint allegations, and therefore control is not as straightforward as Defendant offers it to be.[1]

---

[1]The contradiction between an allegation of the complaint and an attached letter exhibit at issue in *Wintermute* was more obvious, with the letter exhibit contradicting ownership status of plaintiff's credit card account as alleged in her complaint. Moreover, *Wintermute* cites to a Seventh Circuit decision, *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998). The court in *Northern Indiana Gun* stressed caution when reviewing the content of attached exhibits for purposes of resolving purported conflicts with allegations of a complaint. While a document "will be read to evidence what it incontestably shows," the document itself "does not, however, establish the truth of these unilateral statements" and that "care not to overemphasize their importance" must be taken. *Northern Indiana Gun,* 163 F.3d at 455. Review of the exhibits here should be based upon considerations of context given the communications between the parties overall, *see id.* at 455, along with questions of evidentiary credibility and weight, all of which surpass what are appropriate considerations for this court on a motion to dismiss. *See Jones v. City of Cincinnati,* 521 F.3d 555, 561 (6th Cir. 2008).

The principle does not apply here, because there is no actual inconsistency between Plaintiff's allegations and her exhibits. Plaintiff's allegations are grounded in the alleged fact that the risk insured under each policy was not, in fact, located within the local government's taxing jurisdiction. Plaintiff also maintains that the tax that was imposed could include an *undisclosed* collection fee.[2] The Court agrees that, accepting Plaintiff's allegations as true and absent further discovery, the Court is not obligated to accept movant's representation that the charge as listed on the settlement sheet is an accurate charge for local government premium taxes owed and paid to Nielson & Sherry and that it does not include an undisclosed collection fee. Neither will the Court at this stage engage in an protracted legal analysis of the isolated issue of how the purported "plain words" of K.R.S. § 91A.080, which provides for a collection fee, should be interpreted.

Defendant argues at length that this action must be dismissed, pursuant to Civil Rule 12(b)(7), because Nielson & Sherry and the City of Florence are both necessary, indispensable parties under Federal Civil Rule 19(a) without whose joinder this Court "cannot accord complete relief among existing parties." To evidence this necessity, Defendant cites a host of state and federal tax cases, which authorities understandably reflect that suit against a taxing authority or entity when it has overcharged taxes is appropriate. The circumstances of those authorities are not analogous to Plaintiff's legal theory here – that it never owed the tax in the first place and that it was due to the acts or

[2]Plaintiff acknowledges in her Response that later dismissal of her allegations relating to the imposition of an undisclosed collection fee may be appropriate, if discovery confirms that no such fee was, in fact, a part of any taxes charged to her.

omissions of Defendant in connection with issuing the title policy that Plaintiff was wrongly charged these taxes, rather than the errors of a taxing authority.

Defendant maintains that Plaintiffs basically seek return of "wrongfully collected local government taxes" and under K.R.S. § 91A.080 overpayment of any local government fee or tax "shall be refunded" to the insurance company, and then provided to the customer. According to Defendant, this suit should not continue without the presence of the taxing authority from whom a refund ultimately must be sought, because it threatens needless conflict with a state statutory process for seeking tax refunds.

Any mistake on the closing form was Nielson & Sherry's, argues Defendant and/or this is nothing more than tax money collected in error for which a tax refund is sought, Defendant relying upon *Kaucky v. Southwest Airlines Co.,* 109 F.3d 349, 353 (7th Cir. 1997). But as Defendant also notes, this same argument was made and rejected by this Court in both *Kendrick* and *Nichols.* Despite First American's protests that the Court's reasoning on this point should be reconsidered because analysis at that time did not include consideration that Kentucky regulations *require* First American as the title insurer to pass the municipal tax on to its customers. The Court sees no reason to reconsider the point. When a local government premium tax is in fact owed, that tax is upon the insurer, First American, who may then decide to pass the tax on to its customers. Plaintiff's suit is grounded in what she alleges was not in fact owed and incorrectly or improperly charged to her and others by Defendant insurer.

First American argues that Nielson & Sherry was the settlement agent for the transactions, was the actual "collector" of the tax charges and so must be joined. Yet, Defendant also notes that applicable Kentucky insurance regulations required *it*, the

insurer, "to pass the municipal tax onto its customers," pursuant to 806 KAR § 2:096 ("[a]s to ... title ... insurance ... whenever a local government premium tax is imposed upon insurers for the privilege of engaging in business in a city... the premium charge shall make provision for local government premium taxes"). Plaintiff's Complaint alleges that First American acted directly or through agents for whose acts or omissions it is legally responsible.

Defendant's request is not that it should be permitted to join and sue Nielson & Sherry and/or the City of Florence directly for indemnification or other legal grounds for any legal responsibility that might be assessed against First American. Rather, it maintains that they are primary Defendants that Plaintiff must be required to sue directly, else have her case dismissed. However, Defendant has not shown that, under the legal theories Plaintiff Gunning asserts against it, that the City of Florence or Nielson & Sherry are necessary, indispensable parties and First American's contention for dismissal on this basis is rejected.

While obviously aware of the Court's prior decision in *Kendrick* and *Nichols,* First American nevertheless advances that dismissal of the Complaint is also required because Plaintiff has failed to exhaust administrative remedies before the Kentucky Office of Insurance. Defendant submits that a "fresh look" at the relevant statutes and the prior ruling on this point are in order; the Court disagrees. Defendant proposes in the alternative that, at a minimum, the doctrine of primary jurisdiction calls for staying the case while the Office of Insurance investigates the violations alleged by Plaintiff here. Again, the Court disagrees.

In addition to its consideration of the doctrine's application under the prior version of the Code, as addressed in *Kendrick* and *Nichols,* the Court concludes the doctrine is not appropriate under the current changes in the Insurance Code. The doctrine of primary jurisdiction applies to claims that involve some issue within the special competence of an administrative agency. However, while primary agency jurisdiction *may* apply, this does not mean that it *must* be applied.

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. . . . "Primary jurisdiction," . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its review.

*United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63 (1956).

As was also noted by the Supreme Court in *Western Pacific,* and as recognized by the Sixth Circuit, whether the doctrine of primary jurisdiction is applied is considered on a case-by-case basis.

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this [Supreme] Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed.

*Id.* at 64 (internal citation omitted) (quoted in *Long Distance Telecommunications Litigation v. ITT-U.S. Transmission Sys., Inc.,* 831 F.2d 627, 630 (6th Cir. 1987)). In the case at bar,

the reasons for the origin or existence of the primary jurisdiction doctrine are not present nor does the Court believe the doctrine's purposes would be aided by its application here.

The administrative process now in place calls for refunds to be made through a verification process with the insurer of the local government taxing status. This administrative avenue does not go to the legal issues of alleged improper or unlawful charging of the tax by an insurer. The Department's passage upon these claims would not further uniformity in the regulation of the insurance industry in the Commonwealth, given that the entire processing scheme has now been expressly revised and so any determination by the agency would be as to practices no longer in effect. There is no uniformity concern for future cases, as these are the only such claims capable of being pursued under the law as it existed prior to the July 2008 legislative changes.

Moreover, at the time the conduct and alleged acts or omissions of First American giving rise to Plaintiff's claims were occurring, Kentucky did not have a specific administrative mechanism or avenue in place for the benefit of policyholders seeking to rectify such conduct. The fact that Kentucky has now adopted an administrative procedure is not the equivalent of the Department of Insurance possessing specialized expertise or competence over whether legally such overcharges were willfully or wrongfully imposed based upon the operational/processing policies and procedures utilized by Defendant in imposing local government premium taxes on a particular insured risk.

Moreover, the express provisions of the new legislation and regulations mitigate against deference to the Department of Insurance's processing of pre-July 2008 complaints concerning local government premium taxes, a circumstance unique to primary jurisdiction consideration. The new statute excepts from the exclusive remedy provision

"any refund or credit to a . . . policyholder or assessment by a local government that is affected by litigation pending on July 15, 2008[.]" K.R.S. § 91A.0804(1). And the regulation acknowledges that the Department of Insurance "has no authority to usurp or infringe upon the jurisdiction, prerogative, or authority of the various courts of competent jurisdiction in this Commonwealth, and that the ultimate decision upon questions of law and fact must rest with such courts." 806 KAR § 2:050. In the Court's view, these express legislative pronouncements in the adoption of these new provisions separates consideration of applying the doctrine of primary jurisdiction in this and the other similar cases brought before this Court from other authorities examining application of the doctrine.

Finally, the restitution remedy potentially available through the administrative process is far more limited than the remedies Plaintiffs allege they are seeking. Given this Court's jurisdiction, what constitutes a better remedial avenue for Plaintiff's claims is left to Plaintiff's choice, not Defendant's. The action asserted here is one on behalf of a putative class. The suit here covers a significant time period and raises legal theories and damage remedies not available through even the current administrative mechanisms of Kentucky's Department of Insurance.

For these reasons, the Court declines Defendant's request that it invoke the doctrine of primary jurisdiction.

Defendant also presents other general arguments to the various legal theories presented in the counts of the Complaint. First American challenges that Plaintiff has failed to allege the adequate intentional or grossly negligent conduct necessary to be "unfair, false, misleading or deceptive" for purposes of proceeding with her Consumer

Protection Act claim. Defendant characterizes Plaintiff's assertion of its conduct as "mistakes" or "simple incompetent performance." However, this element of the Protection Act claim goes to evidence of conduct and intention *subjective* to Defendant and therefore peculiarly within its knowledge, pending discovery by Plaintiff. The Court finds Plaintiff's pleading in this regard sufficient to survive dismissal.

Having reviewed Defendant's remaining challenges to Plaintiff's claims, the Court also finds them not well-taken. Defendant's technical argument that Plaintiff's insurance premium transactional wrong and claimed injury are not within the actionable protection of the Unfair Insurance Practices Act statutes under which she sues is an argument more appropriately addressed after the Plaintiff's bases for these claims, and how Defendant's asserted acts or omissions allegedly fall within the parameters of these statutes, is explored in discovery.

The same holds true with Defendant's challenge to Plaintiff's conversion claim. Defendant would have this Court accept as true, at this preliminary stage, that factually Plaintiff is or will be unable to prove the necessary elements of a claim for conversion. Consideration of dismissal of this claim at this point and upon this basis would be inappropriate procedurally. Moreover, for the reasons and argument set forth by Plaintiff in her response, the Court finds that Defendant's reliance upon the economic loss doctrine is misplaced and therefore that Gunning's negligence claim is also not subject to dismissal at this time.

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss and to Strike (Doc. #8) is hereby **denied;** and,

(2) Defendant shall file its Answer by not later than **April 15, 2010.**

This 31st day of March, 2010.

**Signed By:**

***David L. Bunning*** DB

**United States District Judge**

G:\DATA\Orders\08-153 Order re Motion to Dismiss.wpd